UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HERIBERTO MEDINA-PADILLA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**PIEDMONT AVIATION SERVICES, INC., et al.,**<br><br>Defendants. | Civil No. 14-1048 (DRD) |

**OPINION AND ORDER**

Pending before the Court are: (a) *Motion to Dismiss* filed by co-defendants United States Aviation Underwriters, Inc. (hereinafter "USAU") and United States Aircraft Insurance Group (hereinafter "USAIG"), Docket No. 13; (b) *Opposition to Motion to Dismiss*, filed by plaintiffs Heriberto Medina-Padilla and Lopez & Medina Corp. (hereinafter "L & M"), Docket No. 18; (c) *Reply to Opposition to Motion to Dismiss* filed by co-defendants USAU and USAIG, Docket No. 21. For the reasons set forth below, the motion to dismiss is hereby **GRANTED**.

**I.   FACTUAL BACKGROUND**

On September 1, 2001, USAU and USAIG, among other co-insurers, issued Airline Insurance Form PA-01, Policy # SIHL1-200A (the "Policy") to Pace Airlines, Inc. ("Pace"). The Policy covered certain risks assumed by its insured in contractual

1

agreements, generally charter programs, with other companies.[1] As a "Named Insured" under the Policy, Pace listed two Boeing 737-200 aircraft as the insured subjects.

Later that month, Pace entered into a charter program contractual arrangement with Patriot Air, LLC ("Patriot Air"). The Aircraft Charter and Management Agreement ("Charter Agreement") provided that, for the payment of certain management fees, Pace would lease some of its Boeing 737 aircraft for use in Patriot Air's charter flight operations.

The following year, on May 15, 2002, Patriot subscribed to a Passenger Aircraft Agreement ("Passenger Agreement") with Lopez & Medina Corp. ("L & M"), of which current plaintiff Heriberto Medina Padilla ("Medina") served as its sole owner. Pursuant to this agreement, Patriot Air, acting as an indirect air carrier, agreed to provide L & M with aircraft transportation, by way of the Boeing 737 aircraft leased from Pace, in the transportation of its customers to destinations that L & M had booked on the travelers' behalf. Operations finally took off on June 22, 2002 with the departure of its first chartered flight from San Juan to the Dominican Republic; however, turbulent business relations led to the venture's prompt plummet. Soon after, on July 18, 2002, Patriot Air terminated the Passenger Agreement.

---

[1] This case is directly intertwined with Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58 (1st Cir. 2012).

Two months later, Patriot Air filed for voluntary bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. The bankruptcy court subsequently disallowed L & M's proof of claim against Patriot Air, which asserted as its basis the alleged breach of the Passenger Agreement and failure to provide chartered aircraft to L & M's booked passengers. By August 31, 2004, all bankruptcy proceedings had been terminated.

## II. PROCEDURAL HISTORY

On June 3, 2005, L & M filed a breach of contract complaint against, among other co-defendants, USAU and USAIG, as insurers for Patriot Air. Plaintiff L & M set forth three causes of action: (1) that the insurers were liable under Puerto Rico's Direct Action Statute, 26 L.P.R.A. § 2003, for risks insured under the Policy; (2) a declaratory judgment establishing that the risks associated by the breach of the Passenger Agreement, the Charter Agreement, or any other agreements concerning Patriot Air and Pace's charter operations were covered by the at least one of the defendants' insurance policies; and, (3) a determination that the Policy insured against breach of contract risk. *See* Civil Case No. 05-1595 (PG).

On March 8, 2010, this Court dismissed L & M's complaint against USAU and USAIG with prejudice. The Court considered the Policy's plain language, in light of Puerto Rico insurance and

3

contract law, and held that the Policy "clearly and unambiguously covers only tort claims brought by natural persons who have been wrongfully refused the right to transportation on Pace's aircrafts." 694 F.Supp.2d 119, 128 (D.P.R. 2010). The Court's determination that the Policy does not provide coverage for L & M's breach of contract claim thus did not cover Plaintiff's claim against either Pace or Patriot Air.

L & M promptly appealed, asserting that the district court had erred in determining that the Policy's scope was limited to tort claims. On January 26, 2012, the Court of Appeals affirmed the District Court's holding. Following an analysis of the relevant Policy terms,[2] the Court held that the coverage provided under the Policy, specifically "Part I-Liability Coverage" or the comprehensive general liability ("CGL") provision, was limited to tort liability and did not extend to contract-based claims.

In the current suit, plaintiffs Medina and L & M contend that they "first discovered that they had a cause of action for torts against defendants when the circuit court issued its opinion" in 2012. Docket No. 1, page 13. For this reason, on January 23, 2013, plaintiffs sent an extra-judicial claim to

---

[2]   The Policy provides two types of coverage, listed under: (1) "Part II-Physical Damages," which extends coverage for standard aviation risks and physical damages sustained to the insured aircraft (uncontested); and (2) "Part I-Liability Coverage," the scope of which had been contested and was under consideration in the preceding cases.

4

defendants to toll the statute of limitations. On January 21, 2014 plaintiffs filed a complaint against USAU and USAIG for claims sounding in tort for the damages sustained for Patriot Air's breach of the Passenger Agreement and for the "negligent refusal and withholding of transportation." Docket No. 1, page 11. Defendants have moved to dismiss plaintiffs' complaint for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Defendants further provide that plaintiffs' claims are not only barred by *res judicata*, but also time-barred as a matter of law.

### III. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted).  Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to

5

plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; *see e.g.* Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 556 U.S. 678) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint

6

"states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 679-80 (citing Twombly, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 556 U.S. 679).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even

7

if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. 679); see Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); see Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). While the Court is bound by the factual allegations of a complaint, the same aphorism is inapplicable to the plaintiff's legal conclusions. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the

8

allegations contained in a complaint is inapplicable to legal conclusions."). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; *see* Iqbal, 556 U.S. at 681("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. Ocasio-Hernandez, 640 F.3d at 12 (citing Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)).

The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under Twombly-Iqbal. Id. at 104. Second, district courts should accord "some latitude" in cases

9

where "[a] material part of the information needed is likely to be within the defendant's control." Id. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.)(internal citations and quotations omitted).

## IV. ANALYSIS

### *Res Judicata Claims*

In their motion to dismiss, defendants contend that L & M and Medina's claims are barred by *res judicata* and may not be relitigated. Following an analysis under federal law on the doctrine of *res judicata*, we conclude that Plaintiffs' claims are barred under *res judicata*.

The federal law of *res judicata* "governs the effect of a prior federal judgment in a diversity case." Johnson v. SCA Disposal Services of New England, Inc., 931 F.2d 970, 974 (1st Cir. 1991).[3] Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." Apparel Art Int'l v. Amertex Enterprises, 48 F.3d 576, 583 (1st Cir. 1995)(citing Allen v.

---

[3] The outcome in the case at bar would have been the same had the Court applied state law on *res judicata*, which "applies in deciding the *res judicata* effect of a state court judgment in federal court." Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000).

10

McCurry, 449 U.S. 90, 94 (1980) and Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994)).

*Res judicata* seeks to conserve judicial resources by "prevent[ing] plaintiffs from splitting their claims" and instead "provide a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit." Apparel Art Int'l, 48 F.3d at 583; *see* Taylor, 553 U.S. at 892 ("By precluding parties from contesting matters that they had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.")(quoting Montana v. United States, 440 U.S. 147, 153-154 (1979))(internal quotations omitted).

For *res judicata* to apply, the movant has the burden of proving that: (1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related; and (3) the parties in the two suits are sufficiently identical or closely related.  *See* Apparel Art Int'l, 48 F.3d at 583.

First, for "finality" purposes, a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Firestone Tire &

Rubber Co. v. Risjord, 449 U.S. 368, 373-374 (1981)(citations omitted); *see* Acevedo-Villalobos v. Hernández, 22 F.3d 384, 388 (1st Cir. 1994). "Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect." AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005)(citations omitted).

Second, the First Circuit follows a "transactional approach to determine the identity of the underlying claims or causes of action." Apparel Art Int'l, 48 F.3d at 583 (internal citations omitted). Under said approach, courts must determine whether the claims asserted by the plaintiff in the present case arise from the same nucleus of operative facts as those claims that were the subject of the prior judgment. Id. at 584; Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) (citation omitted) ("[A] cause of action is defined as a set of facts which can be characterized as a single transaction or series of related transactions."). In making this determination, a court shall weigh three factors: (1) "whether the facts are related in time, space, origin or motivation;" (2) "whether the facts form a convenient trial unit;" and (3) "whether treating the facts as a unit conforms to the parties' expectations." Id. at 584.

Third, and perhaps most importantly, the application of claim preclusion to parties that did not have an opportunity to

12

litigate and/or contest the earlier action raises important constitutional rights and due process concerns. *See* Gonzalez v. Banco Cent. Corp., 27 F.3d 751 (1st Cir. 1994). Therefore, the Court must inquire whether the final judgment was entered against the same parties or persons in privity with the parties of the second action.[4] Privity has been found to exist "where the party adequately represented the nonparties' interests in the prior proceeding." Robertson, 148 F.Supp.2d at 449.[5] The Court considers not only the identity of interests between the two parties, but also "whether the party's interests were fully represented in the earlier case, albeit by another." County of Boyd v. US Ecology, Inc., 48 F.3d 359, 361 (8th Cir. 1995)(citations omitted).

The Court also considers "whether there is a close relationship between the prior and present parties . . .," as well as "the adequacy of the prior representation, where the adequacy is viewed in terms of incentive to litigate." Robertson, 148 F.Supp.2d at 450; *see* Gonzalez, 27 F.3d at 762. "One party 'adequately represents' the interests of another when the interests of the two parties are very closely aligned and

---

[4] "The term privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within *res judicata*." Robertson v. Bartels, 148 F.Supp.2d 443, 449 (D.N.J. 2001)(quoting EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990))(internal quotations omitted)).

[5] This category of privity is also known as the doctrine of virtual representation, a concept that is common to both claim and issue preclusion doctrines. *See* Robertson, 148 F. Supp. 2d at 450, n.4.

the first party had a strong incentive to protect the interests of the second party." Tyus v. Schoemehl, 93 F.3d 449, 455-56 (8th Cir. 1996).

*Res judicata claim against L & M*

In the present case, plaintiffs have reformulated their complaint as a tort claim pursuant to Art. 1802 of the Puerto Rico Civil Code and have done little to disguise the inherently contractual nature of L & M's claim, which was already litigated (and subsequently denied) in the previous suit. Moreover, the fact that L & M did not properly bring forth the torts cause of action in the previous case, but subsequently included in its "Motion to Alter or Amend Judgment," Docket No. 92 of Civil Case No. 05-1595, an entire section titled "Under Puerto Rico Civil Law a Breach of Contract Claim does not Preclude Concomitant Tort Damages as Alleged in the Complaint." Case No. 05-1592, Docket No. 92, at 6. In this section, plaintiff avers that "the co-existence of Patriot's breach of the Passenger Agreement entered into with plaintiff, when it withheld the transportation provided by Pace's aircraft *does not automatically preclude or exclude the existence of concomitant tort damages suffered by plaintiff L & M*." Id. at 7 (emphasis added).

While L & M did not ever clearly or expressly assert a tort violation in the preceding case, the court also cannot "predict additional claims that might be imbedded amongst those

14

specifically alleged." Lopez & Medina, 667 F.3d at 66. They shared perfect identity in the operative facts and the basis for L & M's claims is sufficient to satisfy the "thing and cause" requirement. As Defendants indicate, the "factual predicates for both complaints are identical and even the measure of the damages requested by L & M in both actions is the same, to the last dollar." *See* Docket 1 in Case No. 05-1595 at ¶¶ 9-29; *see also* Docket No. 1 of this case at ¶¶ 6-26.

While Plaintiffs contend that, acting at the behest of justice, the doctrine of *res judicata* allows for some exceptions[6], we do not believe we are before one of these exceptional circumstances here. In this case, quite simply, a claim that could have been brought in the previous case was not and, as such, was relinquished from further litigation. *See* Universal Insurance Company v. Office of the Insurance Commissioner, 755 F.3d 34 (1st Cir. 2014). For the aforementioned reasons, we find that the present action fulfills the *res judicata* requirements and that L & M is barred from relitigating this claim. We must now turn our attention to

---

[6] "A judgment may be without res judicata effect where: (1) the judgment was rendered pursuant to an invalid acceptance of the claim by the defendant; (2) the court was without jurisdiction to enter the judgment; (3) an attempt to appeal was unsuccessful through no fault of the plaintiff; (4) there is fraud; (5) there is a miscarriage of justice; or (6) public policy demands an exception to res judicata." Medina v. Chase Manhattan Bank, N.A., 737 F.2d 140, 144 (1st Cir.1984).

Medina's personal tort claim, which was not asserted in the previous suit.

*Res judicata claim against Medina*

Claim preclusion requires a perfect identity of the parties. The perfect identity requirement may be fulfilled if the parties in the present action were also parties in the previous action, or if the parties in the current action are in privity with the parties in the prior action. "[W]here one party acts for or stands in the place of another in relation to a particular subject matter, those parties are in privity for purposes of the Puerto Rico preclusion statute."[7] R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 187 (1st Cir. 2006).

In the case at bar, Medina, as the sole owner and principal as L & M, has acquired information about the case which not only allow him to bring suit for damages, but also possibly succeed (given that the district court previously limited the scope of the Policy to natural persons). Medina finds himself in the much coveted win-win situation, in which, even if L & M's claim is dismissed, he still has a chance at prospering in this second suit.

---

[7] *See, e.g.*, Futura Dev., 761 F.2d at 43-44 (holding that perfect identify existed between a parent corporation, on one hand, and its subsidiary and agents, on the other hand); cf. Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d 87, 92 (1st Cir. 1984) (concluding under New Hampshire res judicata law that arson investigators were in privity with the insurance companies for which, as agents, they had acted).

16

It is uncontested that Medina, as the sole owner and principal of L & M, had complete control over the prior litigation. Medina could have easily joined the litigation commenced in 2005, three years after the alleged events took place, but for whatever reason voluntarily chose not to do so. Seven years later, in 2012, Medina found himself equipped with sufficient knowledge so as to argue his way through his personal tort claim. It would be patently unfair to allow Medina to fully litigate the claims of his wholly owned corporation (over which he had absolute control) and then, after failing to prevail, have a second chance to commence a new case based on exactly the same facts and the same alleged injurious conduct.

Although a comparative view of the parties in the current suit shows that they are not perfectly identical to the ones in the previous action, particularly because this case has accrued an additional plaintiff (Medina, in his personal capacity), we find however that sufficient privity between L & M, as a corporate entity, and Medina, in his personal capacity, exists so as to satisfy this requirement.

Given the fact that there is clearly privity between L & M and Medina, to the extent that L & M's claims are barred by *res judicata*, so are Medina's claims. Accordingly, the Court need not go further.

## V. CONCLUSION

In view of the foregoing, the Defendants' *Motion to Dismiss*, Docket No. 13, is granted.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of March, 2015.

                                      s/Daniel R. Dominguez

                                      DANIEL R. DOMINGUEZ
                                      United States District Court